IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMANDA SUE SMITH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 1:15-CV-726-WSD |
| | : | |
| THE UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

COMES NOW Defendant the United States of America ("United States"), by and through the United States Attorney for the Northern District of Georgia, and files this opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint ("Plaintiff's Motion"). Plaintiff has moved to amend her Complaint for a second time to "add additional factual information which provides additional support to and clarification of the allegations set forth in the First Amended Complaint." Plaintiff's Motion at 3. Plaintiff's Motion should be denied.

## I.      PROCEDURAL HISTORY

The procedural history of this case is instructive as to the merits of Plaintiff's Motion, particularly since Plaintiff has failed to oppose Defendant's

pending Motion to Dismiss the First Amended Complaint.

The original complaint was filed on March 11, 2015. (Doc. 1).  Defendant timely filed a motion to dismiss on May 15, 2015.  (Doc. 7).  Plaintiff sought, and Defendant consented to, an extension of time for Plaintiff's opposition until June 15, 2015, which the Court granted.  (Doc. 8).  Plaintiff then sought, and Defendant consented to, an additional extension of time to file her opposition until June 29, 2015, which the Court granted. (Doc. 9).   Rather than file an opposition to Defendant's motion to dismiss pursuant to the two extensions of time she sought, Plaintiff instead moved to amend her complaint on June 28, 2015. (Docs. 10-11). The Court granted this motion on October 14, 2015.

Defendant then timely filed a motion to dismiss the amended complaint, virtually identical to the first motion to dismiss, on October 27, 2015.  (Doc. 13). Plaintiff sought, and Defendant consented, to an extension of time for Plaintiff's opposition until November 30, 2015, which the Court granted.   (Doc. 14). Plaintiff then sought, and Defendant consented, to file excess pages in her opposition, which the Court granted. (Doc. 15).   Plaintiff then sought, and Defendant consented to, an additional extension of time for Plaintiff's opposition until December 14, 2015, which the Court granted. (Doc. 16).

Rather than file an opposition to Defendant's Motion to Dismiss the First

Amended Complaint pursuant to the two additional extensions of time she sought and the Court granted, Plaintiff instead filed the instant motion to amend her complaint again.  Plaintiff's deadline for opposing the Motion to Dismiss the First Amended Complaint has passed, and pursuant to Local Rule 7.1B, "failure to file a response shall indicate that there is no opposition to the motion."

## II.      <u>STANDARD OF REVIEW</u>

Fed.R.Civ.Proc. 15(a) governs the amendments to pleadings and provides that, after any responsive pleading has been filed, subsequent amendments are permitted only with the leave of the district court. The decision whether to grant leave to amend is committed to the sound discretion of the court. *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618 (11th Cir. 1983).  "The types of reasons that might justify denial of permission to amend a pleading include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (citing *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir.1981)).  In addition, "[f]utility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999).

### III.    <u>ARGUMENT</u>

**A.    <u>Plaintiff Does Not Meet the Standards for Leave to Amend.</u>**

This action has now been pending for more than nine months, and seven months have passed since the filing of Defendant's original motion to dismiss. That motion laid out the same legal deficiencies which were fatal to the original Complaint, are fatal to the First Amended Complaint and the proposed Second Amended Complaint ("Proposed Complaint") and therefore render Plaintiff's Motion futile, as discussed below.  Despite already taking the opportunity to amend her complaint upon permission from the Court, Plaintiff failed to cure the deficiencies identified in Defendant's original motion to dismiss.  In fact, Plaintiff has failed to file any response to the motions to dismiss, and every delay and extension of time in this case has been sought by Plaintiff.

While Plaintiff asserts an absence of undue delay, bad faith or dilatory purpose, the procedural history of the case indicates otherwise.  Plaintiff has repeatedly sought the consent of Defendant and approval from the Court for numerous extensions of time with the stated purpose of allowing her additional time to file an opposition to Defendant's motions to dismiss, yet has never filed such an opposition. (Docs. 8-9, 14-16).

Moreover, according to Plaintiff's Motion, the changes to the Proposed

Complaint are based upon documents that Plaintiff's counsel has been in possession of since August 11, 2015, more than four months before Plaintiff filed the instant motion. *See* Plaintiff's Motion at 2.  Plaintiff failed to seek leave to add these supplementary factual allegations at any time in those four months.  Indeed, Plaintiff's counsel was in possession of these documents when he instead sought consent from Defendant, and approval from the Court, for two extensions of time and excess pages with the stated purpose of filing an opposition to the motion to dismiss, an opposition still unfiled and now untimely. (Docs. 14-16).

**B.**     <u>**Granting Leave to Amend Would Be Futile.**</u>

Plaintiff has failed to oppose Defendant's pending motion to dismiss (Doc. 13) and thus her claims are already subject to dismissal for the unopposed reasons stated therein.  Plaintiff concedes that in her Proposed Complaint, she "is not making new claims or adding counts to the Complaint." Plaintiff's Motion at 10. Nor do the proposed factual additions alter the basis of Plaintiff's claims, which is that Plaintiff entered into contracts with Mani Chulpayev, a private citizen, under which Plaintiff agreed to lease to Chulpayev several automobiles Plaintiff had purchased with Chulpayev's assistance, in exchange for Chulpayev making the monthly payments and insurance on the automobiles.  Plaintiff alleges that Chulpayev breached the terms of their contracts by failing to make said payments,

and that the United States somehow either allowed or failed to prevent Chulpayev, a private citizen, from breaching the contracts entered into between Chulpayev and Plaintiff.

As such, all of the legal deficiencies identified in Defendant's unopposed Motion to Dismiss (Doc. 13), apply equally to the Proposed Complaint, and that motion and its contents are incorporated by reference herein to demonstrate that "denial of leave to amend is justified by futility [because] the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999) (citation omitted).

Instead of properly filing an opposition to Defendant's Motion to Dismiss as required by the Federal Rules of Civil Procedures and the Local Rules of this Court, Plaintiff instead argues in the instant motion that the proposed second amendment is not futile.  Plaintiff offers no reason why or how the Proposed Complaint is necessary to overcome the motion to dismiss.  To the contrary, Plaintiff asserts that the First Amended Complaint is sufficient to survive the motion to dismiss.  *See* Plaintiff's Motion at 11.

Plaintiff is incorrect, and for the reasons stated in Defendant's Motion to Dismiss, both the First Amended Complaint and the Proposed Complaint are subject to dismissal and amendment is therefore futile.  For these same reasons,

even were the Court inclined to grant Plaintiff's Motion and consider the Proposed Complaint, that complaint is subject to the same legal deficiencies already identified in Defendant's Motion to Dismiss and should be dismissed for the reasons stated therein.

In Plaintiff's Motion, Plaintiff acknowledges some, though not all, of the arguments raised in Defendant's Motion to Dismiss, focusing largely on a tangential exegesis of the *Twombly* and *Iqbal* pleading standards and failing to address the specific deficiencies that doom both the First Amended Complaint and the Proposed Complaint. *See* Plaintiff's Motion at 11-14. Nevertheless, Defendant offers the below to further demonstrate that amendment is futile, Plaintiff's Motion should be denied, and this action must be dismissed.

    i.      <u>Plaintiff Fails to Identify a Duty Owed to Her by the United States.</u>

Plaintiff identifies no duty that the United States owed to her, as opposed to the public at large, a fundamental defect that is fatal to her claim for negligence. *See Zelaya v. United States*, 781 F.3d 1315, 1324 (11th Cir. 2015) (explaining FTCA cases are subject to dismissal if no valid state tort cause of action is alleged). Nor does Plaintiff dispute the general rule in Georgia that there is no duty to protect the public from third parties. *See Shortnacy v. N. Atlanta Internal Med., P.C.*, 556 S.E.2d 209, 213 (Ga. App. 2001) ("[T]here is no duty to control

-7-

the conduct of third persons to prevent them from causing physical harm to others.").

Instead, Plaintiff purports to rely on a narrow exception to this general rule, the so-called "special relationship" exception articulated by the Georgia Supreme Court in *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693 (Ga. 1982).[1]   Plaintiff's entire claim is thus premised on the concept that the United States had a "special relationship" with Chulpayev such that it had a duty to protect the public from his foreseeable misconduct.  *See* Plaintiff's Motion at 15.  Plaintiff is incorrect and misapprehends the limited nature and extent of this narrow exception, which has no application to the facts pleaded in Plaintiff's Proposed Complaint.

a.    *The "Special Relationship" Exception.*

Plaintiff cannot dispute that, in Georgia, "as a general rule, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others."  *Bradley Ctr., Inc.*, 296 S.E.2d at 696.  A narrow exception to this rule has been carved out by Georgia courts in circumstances where the defendant has a "special relationship" with a foreseeably dangerous tortfeasor.  *Id.*  This exception

---

[1] Plaintiff misstates the holding of *Bradley Center*.  Plaintiff claims the court found liability on the basis of a "close personal relationship," when in fact, as discussed below, the case involved a mental hospital and an institutionalized patient, and the "special relationship" by which the hospital exercised physical, custodial control over the patient.  *See* Plaintiff's Motion at 14.

is grounded in Restatement of Torts 2d, § 315(a), which provides for a legal duty where "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct."   The requirements for establishing such a "special relationship" are narrow, stringent, and do not apply here.

In *Bradley Center*, a private mental hospital released one of its patients despite its ability to keep the patient confined, and despite its knowledge that the patient intended to kill his wife, which he subsequently did.  The legal duty under which the suit was allowed to proceed was that:

> "[W]here the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient."

*Id.* at 695-96.  As the court found, the key issue was the nature of the "control" exercised by the hospital over its inpatient, wherein the hospital was authorized to detain him for 48 hours if he sought discharge against medical advice.  *Id.* at 694; *see also Galanti v. United States*, 709 F.2d 706, 710 (11th Cir. 1983) ("*Bradley*, and other cases like it, hold that the legal duty arises only if the defendant failed to exercise his ability to control the potential criminal.")

In subsequent cases, Georgia courts have clarified the high bar that must be

met to properly allege the requisite element of control. In order for a "duty to control to arise, the physician must be able to '[exercise] control over the freedom of a mental patient' or 'claim the legal authority to confine or restrain [the patient] against his will.'" *Ermutlu v. McCorkle*, 416 S.E.2d 792, 794 (1992) (internal citations omitted). To recover, "a plaintiff must establish that the physician could exercise the requisite 'control' over the mental patient." *Grijalva v. United States*, 289 F. Supp. 2d 1372, 1378 (M.D. Ga. 2003).

The narrowness of the "special relationship" exception is perhaps best illustrated in *Ermutlu*. In *Ermutlu*, the court determined that a "special relationship" did not exist between the hospital defendant and the mental patient tortfeasor because the tortfeasor was only a voluntary outpatient, rather than a committed inpatient. 416 S.E.2d at 794. As such, even though the tortfeasor had been a patient of Dr. Ermutlu continuously for several years, the requisite custodial control was not present and there existed no "special relationship" or legal duty to prevent harm. *Id.* at 793-95. Likewise in *Keppler v. Brunson*, 421 S.E.2d 306 (Ga. App. 1992), where the court affirmed dismissal of plaintiff's claims against various doctors of a mental patient who killed plaintiff's sister because the tortfeasor "was at all times a voluntary patient; at the relevant time he was an out-patient." *Id.* at 307.

Additional Georgia precedent further makes clear the inapplicability of the "special relationship" exception to the instant case.  In *Associated Health Sys., Inc. v. Jones*, 366 S.E.2d 147 (Ga. App. 1988), the Georgia Court of Appeals affirmed liability against a nursing home for injuries the plaintiff suffered in an assault by a fellow resident with a history of violence.  In finding a legal duty, the court emphasized that in the "context of a nursing home, over and above the contractual obligation the nursing home assumed to take care of its residents, the State has imposed a statutory obligation for it to exercise 'reasonable care and skill.'"  *Id.* at 151.  As such, the "special relationship" and legal duty owed by the nursing home defendant over the conduct of its resident arose both from contract and a statute governing nursing homes, neither of which Plaintiff alleges or can allege here.

Finally, in *Landis v. Rockdale Cty.*, 445 S.Ed.2d 264 (Ga. App. 1994), the court found no duty on the part of the police to arrest an individual to prevent foreseeable harm to others.  In *Landis*, the court considered allegations that a local deputy sheriff observed a noticeably intoxicated driver who approached and spoke to him while he was directing traffic at an intersection.  *Id.* at 265. The deputy failed to arrest or restrain the driver from continuing to drive her automobile and, two hours later, the driver caused an automobile accident which resulted in the death of the plaintiff's husband.  *Id.*  The court noted that, as is true here, "[t]he

threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *Id.* at 266.

After noting the general rule that no duty is owed to control the conduct of third persons to prevent physical harm to others, the *Landis* court considered the *Bradley Center* exception and concluded that "[t]here is no special relationship and no duty imposed under these sections because the deputy sheriff exercised no control over the intoxicated driver." *Id.* at 268. Importantly, control was not established simply because "a police officer has authority to arrest a person without a warrant where an offense is committed in his presence or within his immediate knowledge" because "this authority alone does not create a duty to arrest for purposes of a tort action." *Id.* (emphasis in original). Lacking any allegations that the police officer exercised the kind of control identified in *Bradley Center* and its progeny, the court found that "defendants violated no duty for which they could be held liable in tort for the plaintiff's claims" and affirmed the trial court's dismissal of plaintiff's negligence action. *Id.* at 268-69.

      b.    *No "Special Relationship" Existed Between Chulpayev and the United States.*

The plain reading of these cases makes clear that the "special relationship" exception is exceedingly narrow and applies only in cases in which the defendant has legal, physical, custodial control over the underlying tortfeasor. The only

cases in which Georgia courts found a "special relationship," *Bradley Center* and *Associated Health Sys., Inc.*, involved an institutionalized mental patient and a nursing home resident, respectively.   By contrast, the *Landis* court found no "special relationship" even though the police officer in question had caught the tortfeasor in the commission of the crime and had the legal authority to arrest her.

Plaintiff alleges no facts in the proposed Second Amended Complaint suggesting that the United States ever had legal, physical, custodial control over Chulpayev, and therefore alleges no facts that could establish a "special relationship" between the United States and Chulpayev to establish a legal duty owed by the United States to Plaintiff.

All Plaintiff claims is that a "very close personal relationship" existed between the United States and Chulpayev.  *See* Plaintiff's Motion at 15.  Even accepted as true, neither this assertion nor any allegation in the Proposed Complaint comes close to satisfying the "special relationship" standard articulated in *Bradley Center* and its progeny.  In particular, none of Plaintiff's allegations of a conspiratorial relationship between Chulpayev and the FBI, even accepting all of these allegations as true, in any way implicate the "kind of control that *Bradley Center* contemplates."  *Grijalva*, 289 F. Supp. 2d at 1379 (holding that though an "officer in the U.S. Air Force has more 'control' over an airman than a civilian

medical provider has over a civilian patient," this does not satisfy the *Bradley Center* requirements). Rather, the type of control required is "the legal authority to confine or restrain a patient against his will." *Id.*

As such, the general rule stands and the United States, like any private citizen under Georgia law, had no duty to control the conduct of Chulpayev to prevent him from causing harm to others. Plaintiff fails to allege any legal duty owed by the United States and her negligence claim fails.

ii.     Plaintiff Fails to Identify a Breach of a Duty Owed to Her by the United States or a Causal Connection to Her Damages.

Even had Plaintiff properly alleged a legal duty owed to her by the United States, Plaintiff fails to adequately allege any breach of that duty or a causal connection to her alleged injuries. Plaintiff's basic allegation is that Chulpayev, a private citizen, was vaguely "allowed" to continue his automobile leasing operation. *See, e.g.*, Proposed Complaint at ¶ 42. As explained in detail in the Motion to Dismiss, the closest Plaintiff's allegations come to identifying a specific act or omission on the part of the United States relates to the purported violations of the terms of the Judgment in a Criminal Case entered by Judge Clarence Cooper (Proposed Complaint at ¶¶ 38-42, Exhibit 5). Each of these allegations is factually invalid, barred by the discretionary function exception, and fails to allege any causal connection between the purported failures and Plaintiff's alleged damages.

-14-

*See* Motion to Dismiss, Doc. 13, at pp. 9-12, 16-22.

Nowhere in Plaintiff's original complaint, First Amended Complaint, or Proposed Complaint does Plaintiff make any effort, let alone state sufficient specific factual allegations under *Twomby* and *Iqbal*, to demonstrate that any purported act or omission by the United States was the <u>cause</u> of the underlying misconduct alleged against Chulpayev vis-à-vis Plaintiff.  Plaintiff's allegation is that she was the victim of either a breach of contract, or possibly fraud, on the part of Chulpayev with regard to the automobiles she leased to him.  Nothing Plaintiff alleges against the United States, be it that Chulpayev should not have been an informant, that he should have been forced to pay restitution, or that he should have been presented for immigration proceedings, is plausibly alleged to have been the proximate cause of Chulpayev's failure to pay the money to Plaintiff (or her lender) pursuant to the contracts between Chulpayev and Plaintiff.

Instead, Plaintiff's proposed amendments center on red herring allegations regarding the connection between Chulpayev and his alleged FBI "handler," and neither add facts showing acts or omissions that could constitute the breach of any legal duty owed by the United States, nor show how such a purported breach was in any way the cause of her alleged injuries.

iii.      Plaintiff's FTCA Claim Cannot Rely on Alleged Violations of
         Federal Law, Policies, or Procedures.

Plaintiff improperly purports to impose liability on the basis of alleged violations of federal policies and procedures, in particular, Department of Justice and FBI policies regarding the use of Confidential Informants. *See, e.g.*, Proposed Complaint at ¶¶ 41-42. In addition to failing to have any causal connection to Plaintiff's alleged injuries, these purported violations cannot themselves support a negligence claim under the FTCA. *See Dalrymple v. United States*, 460 F.3d 1318 (11th Cir. 2006) (violating an internal policy or procedure does not create a cause of action under the FTCA against the government unless the challenged conduct is independently tortious under applicable state law).

iv.      The Discretionary Function Exception Bars All of Plaintiff's Claims.

As discussed in detail in Defendant's Motion to Dismiss (pp. 16-22), even if Plaintiff had properly stated a state-law claim and shown a causal connection to her injuries, her claims are barred by the doctrine of sovereign immunity and fall outside the Court's jurisdiction. In particular, Plaintiff's proposed Second Amended Complaint is entirely premised on allegations that the FBI and/or the U.S. Attorney's Office and/or the Federal Bureau of Prisons failed to properly exercise their discretionary law enforcement and prosecutorial functions by, for example, failing to supervise Chulpayev as an informant, failing to prosecute

Chulpayev for violating the terms of his supervised release, failing to present Chulpayev for immigration proceedings, failing to require Chulpayev to pay restitution, and failing to track and locate Plaintiff's missing automobiles.  See Proposed Complaint at ¶¶ 38-42, 47-50, 65-66.   All such claims are barred.  *See, e.g.*, *United States v. Faneca*, 332 F.2d 872, 875 (5th Cir. 1964) ("It is clear that the United States has a *duty* to maintain law and order and to enforce the commands of its courts; just how best to fulfill this duty is wholly within the *discretion* of its officers.").

The same is true of Plaintiff's allegations regarding the purported lack of supervision and lack of training of Chulpayev's alleged FBI "handler."  *See* Proposed Complaint at ¶¶ 58-60, 66-71.  Courts have repeatedly held that the manner in which the United States selects, trains, and supervises its employees, are discretionary functions that the discretionary exception is meant to shield.  *See, e.g., Bolduc v. United States*, 402 F.3d 50, 60-61 (1st Cir. 2005) (FBI's supervision of agent is discretionary and susceptible to policy-related judgments); *Suter v. United States,* 441 F.3d 306, 313 n.6 (4th Cir. 2006) (claim that FBI negligently hired and supervised agent is barred by discretionary function exception).

Likewise, to the extent that Plaintiff claims that the FBI should have arrested Chulpayev or otherwise conducted its law enforcement activities to prevent

-17-

Chulpayev's breach of contract, the claim is barred. *See Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir. 1993) (explaining that, while "law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill this duty are protected by the discretionary function exception to the FTCA"); *Littell v. United States*, 191 F.Supp.2d 1338, 1345 (M.D. Fla. 2002) (emphasizing that "[t]he overwhelming consensus of federal case law establishes that criminal law enforcement decisions ... are discretionary in nature and, therefore, by Congressional mandate, immune from judicial review").

No matter how they are characterized, every purported act or omission by the United States constitutes a discretionary function and therefore falls outside the limited waiver of sovereign immunity and the Court's jurisdiction.

v.    Plaintiff's "Deliberate Indifference" Claim Fails to State a Claim Under the FTCA and is Barred by Sovereign Immunity.

In Count II, Plaintiff purports to bring a claim against the United States for "deliberate indifference."  See Proposed Complaint at ¶¶ 74-77.  In addition to the factual and legal flaws detailed above, Count II also fails as no such claim exists in the State of Georgia and thus Plaintiff fails to state a claim under the FTCA.  To bring a claim for "deliberate indifference" against the United States under the FTCA, Plaintiff must show that Georgia state law would provide a private cause of action in similar circumstances against a private defendant.  28 U.S.C. § 2674;

*Daniels v. United States*, 704 F.2d 587, 591 (11th Cir. 1983).  Plaintiff has not and cannot do so.  A review of Georgia statutes and cases reveals no basis for a claim for "deliberate indifference" under state law, and thus no such claim can be brought against the United States under the FTCA.

      vi.       <u>Plaintiff Fails to State a Claim for "Injury to Personalty."</u>

      In Count III, Plaintiff purports to bring a claim for "Injury to Personalty" under O.C.G.A. § 51-10-1.  *See* Proposed Complaint at ¶¶ 78-84.  O.C.G.A. § 51-10-1 provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." This statute "embodies the common law action of trover and conversion." *Grant v. Newsome*, 411 S.E.2d 796 (Ga. App. 1991).  To establish a claim for conversion, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Metzger v. Americredit Financial Svcs.*, 615 S.E.2d 120, 122 (Ga. App. 2005).  Plaintiff fails to allege any facts to show that the United States ever had "actual possession" of the automobiles in question.  To the contrary, Plaintiff alleges at most that Chulpayev, not the United States, possessed the automobiles. *See* Proposed Complaint at ¶ 79-81.  Her sole allegation against the United States is that law enforcement agents had the "ability

to track and locate the automobiles in question" but failed to do so.  *Id.*  This fails to state a claim for conversion under Georgia law, fails to state a claim under O.C.G.A. § 51-10-1, and thus fails to state a claim against the United States under the FTCA.  Moreover, since Plaintiff's allegations are premised on a purported failure by the United States to exercise its law enforcement functions, this claim is likewise barred by the discretionary function exception, as discussed above.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint should be denied.  In the alternative, Plaintiff's Second Amended Complaint should be dismissed for the reasons stated in Defendant's Motion to Dismiss (Doc. 13).

Respectfully submitted,

JOHN HORN
UNITED STATES ATTORNEY

/s/ GABRIEL A. MENDEL
Gabriel A. Mendel
Assistant U.S. Attorney
Georgia Bar No. 169098
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, Georgia  30303
Voice:     (404) 581-6000
Facsimile: (404) 581-4667

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| AMANDA SUE SMITH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 1:15-CV-726-WSD |
| | : | |
| THE UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

*s/ Gabriel A. Mendel*
Gabriel A. Mendel
Assistant U.S. Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

AMANDA SUE SMITH,       :
                            :

      Plaintiff,        :   CIVIL ACTION
                            :
      v.               :   NO. 1:15-CV-726-WSD
                            :

THE UNITED STATES OF AMERICA,  :
                            :
      Defendant.      :
                            :

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system.

This 18th day of December, 2015.

                         *s/ Gabriel A. Mendel*
                         Gabriel A. Mendel
                         Assistant U.S. Attorney