IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMANDA SUE SMITH,<br><br>          **Plaintiff,**<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>          **Defendant.** | 1:15-cv-726-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendant the United States of America's ("United States") Motion to Dismiss [22].

**I.   BACKGROUND**

    A.   Facts

Plaintiff Amanda Sue Smith ("Plaintiff") brings this negligence action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), et seq. ("FTCA"), for alleged damages resulting from a commercial transaction in which she engaged with a person who failed to perform his obligations to her. Plaintiff alleges that, on or about July 2010, she was introduced to Mani Chulpayev by Joseph Sciullara, a friend and business partner of Plaintiff's then-boyfriend, Vincent Antonacci.  (Second Am. Compl. ("Compl.") [21] ¶ 11).

Plaintiff was advised by Sciullara that Chulpayev was in the business of "leasing" new or used vehicles. She was told that this "leasing" arrangement involved Chulpayev using a company called US Asset Protection, LLC ("USAP") to "take over the payments" due on a promissory note or retail installment contract by which the purchaser of the vehicle acquired the vehicle. Chulpayev then leased the vehicles to his customers. (Compl. ¶ 12). In return for "leasing" the vehicles to Chulpayev, purchasers were promised a fixed amount advance payment and, thereafter, monthly payments that exceeded the vehicle insurance costs and the applicable promissory note or retail installment contract payments due. (Compl. ¶ 12). Plaintiff alleges that Chulpayev and Sciullara told her that these transactions were legal, and that "all she had to do was to go to the automobile dealership(s) that Chulpayev selected in Georgia and Florida, purchase a vehicle selected by Chulpayev and sign the loan documents." (Compl. ¶ 12). Plaintiff was promised by Chlupayev that he would pay her a sufficient amount to cover her note payments and insurance on the automobile she purchased. (Compl. ¶ 12). In July 2011, Plaintiff purchased three (3) automobiles from Carmax, and "subleased" them to USAP. (Compl. ¶¶ 14-17).

Plaintiff received payments from Chulpayev for the vehicles for about four (4) months, after which the payments discontinued. (Compl. ¶ 20). Plaintiff

continued to pay her promissory note and insurance payments, and did so for approximately two (2) years.  Unable to make further payments, on or about August 1, 2013, Plaintiff defaulted on her loans.  She claims the default "destroy[ed] her previously stellar credit."  (Compl. ¶ 20).

Plaintiff alleges that the United States knew Chulpayev did not intend to make additional payments, and that he failed to make payment on similar lease arrangements.  (Compl. ¶ 21).  Plaintiff claims that, in July 2012, she learned of Chulpayev's alleged role as a FBI confidential informant.  (Compl. 44).  Plaintiff alleges that SA Jackson and the FBI had a close, personal relationship with Chulpayev, and that Chulpyaev had been used by the FBI as a confidential informant.  (Compl. ¶¶ 23-30, 34-35).  Plaintiff claims SA Jackon allegedly received, from Chulpayev, sporting event tickets and the use of expensive automobiles, and SA Jackson promised Chulpayev that he would intervene to adjust Chulpayev's immigration status.  (Compl. ¶¶ 25-27).  She alleges further that FBI supervisory personnel were aware of the use of Chulpayev as a confidential informant, and that use of him as a confidential informant violated FBI and Department of Justice ("DOJ") confidential informant policies and a court order. (Compl. ¶¶ 31-32, 38-42, 68-71; Exs. 3, 6).

Plaintiff claims her attorney contacted the FBI in 2012 and reported her car transactions and Chulpayev's conduct to Federal Bureau of Investigation ("FBI") Special Agent Dante Jackson ("SA Jackson").  She alleges further that her attorney also contacted (i) the Special Agent in Charge of the FBI's Atlanta office in or about August 2013, (ii) the FBI's Atlanta Legal Unit in 2013, and (iii) the USAO in or about September 2013.  (Compl. ¶¶ 44-46, 50-51).

Based on this relationship, Plaintiff thus alleges the United States knew of Chulpayev's *modus operandi* in his dealings with numerous individuals, and that the FBI and the United States Attorney's Office ("USAO") knew of Chulpayev's propensity to engage in criminal activity.  (Compl. ¶¶ 21, 43).  She claims the United States is liable for Plaintiff's damages apparently because she claims the government should have prohibited Chulpayev from engaging in the conduct or warned Plaintiff about it.  Plaintiff asserts claims of negligence (Count 1), "deliberate indifference" (Count 2), and, under O.C.G.A. § 51-20-1, injury to personalty (Count 3).  Plaintiff seeks compensatory damages and costs.

B.   Procedural History

On July 1, 2016, the United States filed its Motion to Dismiss.  It argues that Plaintiff fails to state a cognizable FTCA claim, including because Plaintiff fails to identify a duty owed to her by the United States, a breach of that duty, or a causal

4

connection between the breach and Plaintiff's alleged injuries.  The United States also seeks to dismiss Plaintiff's deliberate indifference claim, arguing that it fails to state a claim and is barred by sovereign immunity.  The United States next seeks to dismiss Plaintiff's injury to personalty claim, arguing that Plaintiff fails to allege facts to show that the United States converted her automobiles or had actual possession of them.

## II.   DISCUSSION

### A.   Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)

(construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the the United States is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

    B.    Analysis

        1.    Federal Tort Claims Act

Under the Federal Tort Claims Act, the United States has waived its sovereign immunity in limited circumstances and can be liable for negligent or wrongful acts or omissions of government employees only "under circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).[1]  The United States's liability for negligence arises only if state law imposes a duty that the government tortfeasor allegedly breached.  Tisdale v. United States, 62 F.3d 1367, 1371 (11th Cir. 1995).  The Court looks to Georgia law to decide whether state law imposes a duty that the United States breached here.

Plaintiff claims that the United States is liable for negligence in Plaintiff's transaction with Chulpayev.  In Georgia, a plaintiff in a negligence action must prove (i) that the defendant had a legal duty to conform to some standard of conduct, (ii) a breach of that duty, (iii) a causal connection between the conduct and the resulting injuries, and (iv) damages as a result of the alleged breach.  Bradley Ctr., Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982).  Plaintiff claims the United States's duty arises from the "special relationship" exception.

Under Georgia law, there is no general duty to stop third persons from causing harm to others.  Id. at 696.  Where, however, there is a special relationship between a defendant and the third party at issue, an independent duty may arise.

---

[1] The Court here borrows from the explanation of FTCA and Georgia law set forth in Frazier v. United States, No. 1:15-CV-1174-TWT, 2016 WL 3633541, at *2 (N.D. Ga. July 7, 2016), a case in which the Court considered similar allegations against Mani Chulpayev.  The Court examines Frazier in further detail below.

Id.  A special relationship for tort law purposes exists when the defendant has control over a third party, such as in the case of a physician who knows or should know a patient is likely to cause bodily harm to others.  Id.  The special relationship exception is based on the principle that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."  Id. (quoting Restatement (Second) of Torts § 319 (1965)).[2]

The control required to support that a special relationship exists is high. Frazier v. United States, No. 1:15-CV-1174-TWT, 2016 WL 3633541, at *2 (N.D. Ga. July 7, 2016).  For example, a psychiatrist exercises the requisite control over an inpatient in a mental hospital whom he knows or reasonably should know is likely to cause bodily harm to others, but does not exercise the requisite control over a voluntary outpatient.  Ermutulu v. McCorkle, 416 S.E.2d 792, 794-95 (Ga. 1992).  Where the defendant has the "legal authority to confine or restrain [a third

---

[2]  The Wessner court noted that, "[o]f particular interest here is the second illustration accompanying this Restatement section: '2. A operates a private sanitarium for the insane.  Through the negligence of the guards employed by A, B, a homicidal maniac, is permitted to escape.  B attacks and causes harm to C.  A is subject to liability to C.'"  296 S.E.2d at 696 n.1.

party] against his will," a special relationship exists.  Baldwin v. Hosp. Auth. of Fulton Cty., 383 S.E.2d 154, 156-57 (Ga. 1989); see also Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1157-58 (11th Cir. 2011) ("[S]ubsequent decisions interpreting and applying Wessler have made it clear that the 'control' that gave rise to the duty in that case was the 'legal authority' to restrain a person's liberty.").

As an initial matter, Plaintiff does not provide any authority to support that the special relationship exception set forth in Wessner extends to claims of economic, rather than physical, harm.  "Georgia courts . . . have assiduously resisted efforts to extend Wessner's holding to . . . claim[s] for economic losses (as opposed to physical harm or property damages) that resulted from negligen[ce] . . . ."  Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1158 (11th Cir. 2011) (citing cases).  Because the special relationship exception does not apply to claims of economic loss, the United States did not have a duty to stop Chulpayev, a third party, from causing economic harm to Plaintiff or to warn others of the possibility of it.

Even if the special relationship exception applied to claims of negligence resulting in economic loss, Plaintiff fails to allege facts to demonstrate the degree of control required to create a special relationship under Georgia law.  In Frazier,

the Court considered allegations involving Mani Chulpayev similar to those alleged in this case. The plaintiffs in Frazier alleged, like here, that Chulpayev was a FBI confidential informant, and that he had a "very special relationship" with the FBI and FBI agents. Frazier, 2016 WL 3633541, at *2. The plaintiffs alleged that Chulpayev was involved in the murder of Melvin Vernell III, and sought to hold the United States liable for the murder. The Court found:

> What the Plaintiffs do not allege, however, is that the United States exercised such a degree of control over Chulpayev that it owed a duty to protect third parties from his conduct. There are no allegations in the complaint that would indicate a degree of control even close to that exercised by a doctor over an inpatient in a mental hospital. In fact, the Plaintiffs' own allegations suggest that the United States did not exercise enough control over Chulpayev to create the necessary special relationship. Specifically, the Plaintiffs allege that "Chulpayev had his own pressing legal reasons to facilitate the murder of [Melvin] Vernell [III]."

Id. The Court in Frazier concluded that, "[b]ecause no special relationship existed, the [United States] had no duty to protect third parties from Chulpayev's actions[.]" Id. The Court granted the United States's motion to dismiss the plaintiffs' FTCA negligence claims. Id.

Here, Plaintiff purports to allege a special relationship based on SA Jackson "promis[ing] Chupayev that he would intervene for him to adjust his immigration status as Chulpayev specifically made such an inquiry of SA Jackson regarding said adjustment in status." (Compl. ¶ 25). Plaintiff claims that "SA Jackson

10

received expensive jewelry[,]" "sporting event tickets[,]" and "the use of expensive automobiles from Chulpayev." (Compl. ¶¶ 26-28). SA Jackson allegedly provided protection for Chulpayev "from any investigations into Chulpayev's activities, illegal or otherwise . . . ." (Compl. ¶ 29). "[A]s an example of SA Jackson's control over Chulpayev," Plaintiff alleges that SA Jackson told Chulpayev not to speak with the Sandy Springs Police Department regarding Chulpayev's alleged role in the murder of Mr. Vernell. (Compl. ¶ 37). Plaintiff also offers conclusory allegations that the United States exercised "a degree of control over Chulpayev and his activities." (See, e.g., Compl. ¶ 80).

These allegations do not demonstrate the degree of control required to create a special relationship under Georgia law. The allegations appear to show, at most, an arrangement, mutually beneficial to SA Jackson and Chulpayev, which included various gifts to SA Jackson, and for which Chulpayev allegedly received cover for his allegedly illegal activity and the promise of work to adjust his immigration status. "Such allegations indicate that Chulpayev was acting of his own free will without control from the [United States]." Frazier, 2016 WL 3633541, at *2. Even if the allegations indicated the United States possessed some degree of control over Chulpayev, the allegations do not demonstrate that the United States had a degree of control analogous to the "legal authority to confine or restrain

[Chulpayev] against his will." Baldwin, 383 S.E.2d at 156-57. If the special relationship exception applied to economic loss claims—which the Court finds it does not—Plaintiff does not allege facts to demonstrate a special relationship between the United States and Chulpayev. The United States thus did not have a duty to protect Plaintiff from Chulpayev's actions. Plaintiff's negligence allegations do not state a claim under Georgia law, and the United States's Motion to Dismiss Plaintiff's negligence claim under the FTCA is granted.

2. Deliberate Indifference Claim

The United States next seeks dismissal of Plaintiff's "deliberate indifference" claim, which Plaintiff purports to bring under the FTCA. In FTCA cases, state law determines the extent of the United States's liability. See Pate v. Oakwood Mobile Homes, Inc., 374 F.3d 1081, 1084 (11th Cir. 2004). In dismissing the plaintiffs' "deliberate indifference" claim, the Court in Frazier noted that the plaintiffs "cite no Georgia law that allows a claim for deliberate indifference[,]" and the Court stated it was "also unaware of [an independent deliberate indifference] claim under Georgia law." 2016 WL 3633541, at *2.[3] The

---

[3] As the United States points out, the only regular application of the phrase "deliberate indifference" is to define the scope of liability against local governments in civil rights claims brought under 42 U.S.C. § 1983.

United States's Motion to Dismiss Plaintiff's deliberate indifference claim is granted.

### 3. Injury to Personalty Claim

Finally, the United States seeks to dismiss Plaintiff's claim for "injury to personalty" under O.C.G.A. § 51-10-1. Section 51-10-1, which codifies the common-law action of conversion, provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1. Georgia courts have construed Section 51-10-1 as authorizing "recovery of damages when a government official, without lawful authority, deprives an individual of his or her property on even a temporary basis." Carter v. Butts Cty., 821 F.3d 1310, 1324 (11th Cir. 2016) (quoting Romano v. Ga. Dep't of Corr., 693 S.E.2d 521, 524 (Ga. Ct. App. 2010)). To establish a claim for conversion under Georgia law, a plaintiff must prove: (1) proof of ownership or title to the disputed property, or the right to immediate possession of the property; (2) actual possession of the property by the defendant; (3) demand by the plaintiff for the return of the property; (4) the defendant's refusal to return the property; and (5) the value of the property. Id. (citing, among others, Buice v. Campbell, 108 S.E.2d 339, 341 (Ga. Ct. App. 1959)).

Plaintiff fails to allege any facts to show the United States ever had "actual possession" of the automobiles. To the contrary, Plaintiff consistently alleges that Chulpayev, not the United States, possessed the automobiles. (See Compl. ¶ 17 ("Chulpayev or one of his associates took possession of the vehicles.")); Id. ¶ 79 (Plaintiff requested SA Jackson "to require . . . Chulpayev[] to return the automobiles . . ."); Id. ¶ 80 ("SA Jackson, with full knowledge that Chulpayev had possession of these automobiles . . . .")). Plaintiff thus fails to state a claim for conversion under Georgia law, and the United States's Motion to Dismiss Plaintiff's claim for injury to personalty under Section 51-10-1 is granted.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the United States of America's Motion to Dismiss [22] is **GRANTED**. This action is **DISMISSED**.

**SO ORDERED** this 14th day of November, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE